liTHIBODEAUX, Judge.
Rose and Halloway Sells discovered exteri- or cracks in various areas of their recently purchased home which were soon attributed to a cracked foundation slab. They brought a redhibitory action against the sellers, James and Deborah Puls, seeking a reduction in the purchase price of the home pursuant to La.Civ.Code art. 2520. Mr. and Mrs. Puls alleged that a simple inspection of the home prior to the purchase did not reveal the defective condition and that the value of the home was ^diminished because of the defect. The trial court agreed and awarded them $9,250.00, the estimated cost of repair. The Pulses filed this appeal asserting that the trial court’s factual findings were erroneous. We find no manifest error in this case and, therefore, affirm the judgment of the trial court.
I.

ISSUES

The issues presented for review are:
1. whether the trial court erred in finding the existence of a cracked foundation;
2. whether the cracked foundation constituted a redhibitory defect under La. Civ.Code art. 2520 in that it diminished the value or use of the property; and,
3. whether the alleged defect was discoverable by simple inspection.
*434 II.

FACTS

On February 6, 1995, the Sellses purchased an approximately twelve year-old home in Lake Charles from James and Deborah Puls, a couple who had lived in the home for approximately three years. Rose Sells, who lived in Baton Rouge, visited the house once before purchasing it and did not detect any interior or exterior cracks during her inspection of the property. Halloway Sells was working in Cincinnati, Ohio prior to the sale and did not personally inspect the home before the purchase. Before purchasing the home, however, the Sellses hired Richard Landreneau of Aspen Home Inspection Service to conduct a pre-purchase inspection. Landreneau’s report stated essentially that the foundation was in good condition. The only crack mentioned in the report was described as a hairline crack in the front |3porch, located to the left of the front door. This condition was dismissed as not being a cause for concern because such cracks were very common in structures such as porches, garage slabs and sidewalks. Nevertheless, Landreneau later testified that he would have had to pull back the carpet in the interior of the house to determine if, in fact, the crack he detected on the porch extended into the foundation underlying the house. Because he did not do this, his opinion regarding whether the slab was indeed cracked was somewhat limited. He stated that he did not detect any interior or exterior cracks in any part of the slab foundation during his inspection and that any brick or mortar cracks he viewed were hairline shrinkage cracks. Consequently, he surmised that the foundation was not cracked.
Soon after the closing date in April of 1995, the Sellses moved into the home. Later that summer, Rose Sells noticed that the brick exterior on the front of the home was sweating. She suspected a possible foundation problem. The Sellses hired Robert Johnson of National Foundation Repair to conduct ah inspection of the property in October, 1995. Johnson’s findings regarding the' foundation differed significantly from those in Landreneau’s pre-purchase inspection report. Johnson found a hairline crack in the garage slab which penetrated the exterior grade beam beneath one of the garage doors. He found a second crack immediately at the front door of the property in the porch and a third, also in the porch, further to the right. Using a shovel, he dug beside the slab where the house and porch came together and saw that the foundation was a monolithic pour as distinguished from a separate one. This led him to believe that the cracks on the porch probably extended into the foundation underlying the interior of the home. Johnson also detected brick and mortar cracks above several windows in the area facing the porch and also at the back, left-hand comer of the house near one of the exterior doors. He also ^determined that an exterior door in that area was not square. In addition, Johnson used a four-foot carpenter’s level and took periodic measurements on the floors throughout the home. He concluded that there was sufficient foundation settlement failure that would warrant repair work, and formulated a repair plan and submitted a bid of $9,250.00 to repair the foundation.
The Sellses filed suit alleging the existence of a redhibitory defect entitling them to a reduction in the purchase price of their home because of the diminished value of the property or the cost of repairing the slab. The Pulses, conversely, argued at trial that the cracks complained of were all hairline cracks and, although noticeable to the naked eye, were only cosmetic in nature. Additionally, they argued that the Sellses were not entitled to a reduction in price because a simple inspection would have uncovered the defects. They presented the testimony of a civil engineer, Dr. Janardanan Uppot, to support their contentions.
Uppot, who holds a Ph.D. in civil engineering, conducted an entirely visual inspection of the property. He opined that because there was a joint along the front porch wall, the foundation was not a monolithic pour and, therefore, the cracks located in the porch were not damaging to the foundation of the home. He did admit on cross-examination, however, that the joint was an expansion joint that could possibly have been placed there for the sole purpose of separating the aggregate on the porch from the remainder of the slab, and may not have been used, as *435 he had suggested earlier, to separate two pieces of concrete. He further testified that the brick and mortar cracks in the exterior walls were settlement cracks, but they were not of the sort that would jeopardize the structural integrity of the home.
Gary Todd testified for the Sellses. The parties stipulated that he was an expert in civil engineering. Todd also conducted an entirely visual inspection of | r,the foundation in November of 1995 and testified in his deposition that he did not believe the foundation was a monolithic pour. Because he presumed the porch was detached, he concluded that the cracks in the porch did not affect the structural integrity of the home. However, he testified that cracks found in the bricks and mortar on the front or west side of the home and those on the south side of the home would require repair because 95% of the time, cracks such as those are caused by cracks in the slab.
The trial court concluded that the slab was defective at the time of the sale, but because of the commonality of cracks like those at issue in this case, it did not find it unreasonable for an average buyer of a home in that area to see them and to then determine that there was no cause for further examination or concern. He also did not believe that a reasonable inspection of the property would have resulted in the discovery of a cracked foundation, especially in light of the fact that after four separate inspections, opinions differed as to the condition of the slab. Further, the court stated that it preferred the testimony presented by Todd and Johnson over Uppot’s testimony because their inspections were conducted closer in time to the circumstances. Because Johnson was the only person to visually inspect the foundation to determine if it was indeed monolithic, the court was persuaded by his finding regarding the description of the slab. In addition, both of their findings reflected the need for foundation repair work and convinced the court that the Sellses were entitled to the estimated repair costs of the property.
III.

LAW AND DISCUSSION

In addressing the Pulses’ contention that the trial court erred in finding that the slab foundation was cracked, we find that the trial court’s finding is not | ¡¡manifestly erroneous. In this case, the trial court was more impressed with the testimony of witnesses Todd and Johnson and their findings regarding the evidentiary value of the visible cracks towards the existence of a cracked slab. Moreover, the findings uncovered by the hands-on inspection conducted by Johnson, in the form of unsquare doors, unlevel floors and cracks in the exterior of a slab that Johnson was able to visibly determine to be monolithic, are all factors evident in the record that reasonably support the trial court’s findings of a cracked slab. Thus, the trial court’s finding of a cracked slab will not be disturbed.
The next issue presented' is whether the cracked slab constitutes a redhibitory defect under La.Civ.Code art. 2520. Article 2520 of the Louisiana Civil Code states in pertinent part:
The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
[[Image here]]
A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.
As stated in Destefano v. Crump, 96-951, p. 3 (La.App. 5 Cir. 4/9/97); 694 So.2d 424, 426, “the ultimate question of the existence of a redhibitory vice and the amount awarded for a reduction in the purchase price are questions of fact for the trial judge, which should not be disturbed in the absence of manifest error or abuse of the wide discretion afforded her.” It is uncontested that cracks did exist in various locations on the exterior of the home, that a portion of the front exterior of the home sweated and, according to at least two witnesses in the field of foundation repair and inspection, those cracks evidenced settling in the foundation of the home. Further:
*436 |7The occasion and occurrence of movement and cracking in the foundation and structure of the home, regardless of the cause, and the additional problems including exterior brick cracking, roof leaks and sticking and sagging interior doors, establish a lack of quality, thereby warranting a reduction in the purchase price.
Dodson v. Walker, 93-240, p. 3 (La.App. 1 Cir. 8/4/94); 645 So.2d 1153, 1154, writ denied, 94-2978 (La.2/3/95); 649 So.2d 406.
After finding that the cracked slab constitutes a redhibitory defect, the court decided, based upon its discretion, that the Sellses were entitled to the estimated cost of repairs equaling $9,250.00. “One of the principal elements in formulating a reduction in purchase price is the cost of repairs.” Destefano v. Crump, 694 So.2d at 426. In regards to sales of immovable property, the amount to be awarded is the amount necessary to convert an unsound structure into a sound one. Lemonier v. Coco, 237 La. 760, 112 So.2d 436 (La.1959). The court based its award on the only estimate presented to it regarding the cost to repair the cracked foundation. Because it clearly acted within its discretion and in accord with the principles cited above, we find no manifest error in the trial court’s award.
The Pulses assert, however, that the Sellses are precluded from recovering the amount awarded because the cracks were discoverable by simple inspection. Article 2521 of the Louisiana Civil Code states that a seller does not warrant defects that were known to the buyer at the time of the sale, or defects that should have been discovered by a reasonably prudent buyer of such things. The trial court stated in its oral reasons for judgment that it believed the defects were not discoverable at the time of purchase because of the absence of gross problems on the interior of the house which typically alert average home buyers to foundation problems. The court further reasoned that it believed that the settling in this home was in the early stages and that home buyers investing in a home of this quality andjgjocated in this area, which he described as an “upper middle class” neighborhood, would have addressed the issue if they were suspicious of foundation problems. Moreover, the court stated, in essence, that the Sellses could not be expected to have taken notice of or to have been alerted to a possible foundation problem, when their trained home inspector, Landreneau, was unable to detect and/or place any concern on many of the exterior cracks that were later discovered by the foundation experts. In addition, all of the witnesses who conducted inspections of the property testified that it would have been necessary to pull back the carpet in the interior of the home to readily determine if the cracks on the exterior were related to cracks in the slab. None did. Instead, all conclusions drawn about the condition of the foundation were based on opinions derived from their experience and prior educational training. Moreover, it cannot be said that the Sellses did not inspect the property as reasonably prudent buyers because, “[t]he scope of a buyer’s inspection depends on the facts in each case, including the knowledge and expertise of the buyer, the opportunity for inspection, and the assurances of the seller. Furthermore, a buyer is not required to examine with expertise or to deface the thing to examine the inner or hidden parts of the thing particularly where damage can only be discovered by removal of surface coverings.” Sydnes v. Harwell, 94-1194, p. 5-6 (La.App. 3 Cir. 3/1/95); 651 So.2d 419, 423. Based upon our review of the record, we find that the trial court was not manifestly erroneous in concluding that the Sellses acted as reasonably prudent buyers of a new home and the defective condition of the foundation was not discoverable at the time of the sale.
JgIV.

CONCLUSION

Accordingly, the judgment of the trial court is affirmed with costs of this appeal to be borne by defendants-appellants, James Puls and Deborah Puls.
AFFIRMED.
AMY, J., dissents and assigns reasons.